IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MICHAEL P. DUNDON, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 05-6262-PK |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

KATHRYN TESSINARI
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, Oregon 97401
    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

JOHANNA VANDERLEE
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

PAPAK, Magistrate Judge:

Plaintiff Michael Dundon seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

## BACKGROUND

Born in 1952, Dundon obtained a GED and completed two years of college education. Tr. 85.[1] He also completed an internship in alcohol and drug counseling in 1990. Tr. 85. Between 1973 and 2001 Dundon worked as a logger, laborer, cabinet assembler and traveling salesman. Tr. 92.

In his initial application, Dundon suggested he is unable to work because, "I don't like talking to people, memory problems, cannot plan or follow through on things, [I am a] recovering alcoholic." Tr. 79. The record shows Dundon's claim is based upon his bipolar and anxiety disorders. Tr. 52 - 53, 502. Dundon filed applications for DIB and SSI on April 16, 2001, relying upon April 1, 2001 as his onset date. Tr. 68, 498. These applications were denied by the ALJ and the Commissioner's decision became final on July 7, 2005. Tr. 7 - 9.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 107 S. Ct. 2287, 2291 (1987). Dundon challenges the ALJ's

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer filed December 28, 2005 (Docket # 9).

2 - FINDINGS AND RECOMMENDATION

evaluation of the evidence and his conclusions at steps four and five.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.1545(a), 416.920(e), 416.945(a); Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(iv).  If the claimant cannot perform past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. *Yuckert*,107 S. Ct. at 2291; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098.  If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity.  *Yuckert*, 107 S. Ct. at 2291; *Tackett*, 180 F.3d at 1098.  If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§  404.1566, 404.1520(f), 416.920(f).

## THE ALJ'S FINDINGS

The ALJ found Dundon's allegations "not entirely credible."  Tr. 31.   The ALJ found evidence supporting Dundon's bipolar disorder, anxiety disorder and recovering alcoholic disorder.  Tr. 35.  The ALJ assessed Dundon's  RFC:

> The claimant retains the residual functional capacity to perform simple, repetitive tasks with moderate contacts with co-workers and the general public.

3 - FINDINGS AND RECOMMENDATION

Tr. 35.

At step four, the ALJ found that Dundon's's RFC did not preclude returning to his previous work as a cabinet assembler and carpentry laborer. Tr. 34 - 35. Accordingly, the ALJ determined that Dundon was not disabled under the Act at any time through the date of his decision. Tr. 35.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) *citing Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Dundon contends the ALJ failed to reach an accurate RFC assessment because he improperly assessed Dundon's credibility, improperly rejected Dundon's testimony, improperly addressed medical evidence, and solicited inaccurate vocational testimony in relying upon the disputed RFC assessment.

4 - FINDINGS AND RECOMMENDATION

**I. Dundon's Credibility**

The ALJ based his credibility finding upon Dundon's medical treatment record and "discrepancies between [Dundon's] claims, the reports of others, medical and other reports, and the findings made upon examination." Tr. 31.  The ALJ  also noted allegedly inconsistent behavior in Dundon's daily activities and repeatedly referenced Dundon's alcohol consumption. Tr. 27 - 29, 31 - 32.  Dundon's credibility in turn influences interpretation of his medical record, discussed below.

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  In construing his credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*.

The ALJ noted that Dundon ceased taking medication, initially prescribed for his depression. Tr. 29, 32. Medical notes show that a physician suggested Dundon cease taking antidepressants because their side effects precipitated his mania. Tr. 225.  He later stopped taking Depakote  for his bipolar symptoms because of sedation, vision disturbances and unacceptable blood serum levels.  Tr. 242, 258, 311, 319.  If the ALJ cites non-compliance with treatment in a credibility determination, he must consider reasons for discontinuing treatment. *See Smolen*, 80 F.3d at 1284.  When a claimant gives good reason for not taking medication for

5 - FINDINGS AND RECOMMENDATION

his symptoms, his symptom testimony cannot be rejected for not doing so. *Id.*

The ALJ also cited Dundon's activities of daily living in finding Dundon not fully credible. Tr. 25. Daily activities inconsistent with alleged disability may support a negative credibility finding, but sporadic completion of daily living activities, such as intermittently preparing meals, occasional yard maintenance, or attending AA meetings, are not equivalent to full time employment. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Furthermore, the record directly contradicts the ALJ's assertion that Dundon's maintained personal hygiene and drove daily. Tr. 25, 33. A claimant "need not vegetate in a dark room," to be found disabled. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).

Dundon appears distraught and disheveled throughout the record, and clinicians repeatedly and regularly observed Dundon's difficulty articulating himself and his limitations. Tr. 90, 172, 212, 247, 258, 262 - 263, 311, 317 - 318, 430. Though inarticulate, Dundon's clinical presentation regarding his depression, mania and anxiety is generally consistent throughout the record.

The medical record consistently documents and corroborates Dundon's symptom testimony. This evidence includes inpatient treatment notes and extensive outpatient and clinical counseling records corroborating Dundon's manic and depressive symptoms, as well as his social avoidance, anxiety, and inability to consistently maintain activities of daily living. Tr. 212, 311, 317 - 318. The ALJ erred in suggesting that Dundon's credibility and testimony were unsupported by the medical record. Once a claimant has shown an underlying impairment, the ALJ may not reject symptom testimony without specific findings showing clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1282, *affirming Cotton v. Bowen*, 799 F.2d 1403 (9th

6 - FINDINGS AND RECOMMENDATION

Cir. 1986).

For these reasons the ALJ failed to articulate substantiated clear and convincing reasons for his credibility determination. His findings are not sufficiently specific for this court to conclude that he did not arbitrarily reject Dundon's testimony. *Doddrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993), *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Accordingly, his credibility determination should not be sustained.

## II. Medical Source Statements

### a. Physical Impairments

Dundon suggests medically documented physical impairments include headaches and liver dysfunction. The record demonstrates an episode of cluster headaches, but does not demonstrate liver impairment. Tr. 391 - 393. The ALJ appropriately cited these impairments in his discussion. Tr. 25. Medical evidence does not support significant physical impairment.

### b. Mental Impairments

The ALJ found Dundon's bipolar disorder, depression and recovering alcoholism disorder "severe" but found these did not meet or equal a listed impairment and so did not significantly impact Dundon's ability to return to his past relevant work at step four. Tr. 35. The ALJ noted Dundon's IQ, emphasizing that Dundon's psychological testing suggested "moderate limitation" only. Tr. 28. These are not sufficiently specific reasons for disregarding opinions of treating and evaluating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 2003). Each is considered in turn. The ALJ assigned these sources none and little weight, respectively, and does not establish what medical sources he relied upon instead. Tr. 33.

#### 1) Dr. Helms

Dr. Helms, a treating psychiatrist at Lane County Psychiatric Hospital, initiated, oversaw and completed Dundon's treatment at the facility between August 8 - 17, 2001.  Tr.  219 - 237.  During this period, Helms conducted an intake examination and evaluation, a neurological exam and a discharge summary.  Tr. 221 - 226.  Helms diagnosed bipolar disorder with psychotic features, noting that Dundon experienced both auditory and visual hallucinations.  Tr. 221, 223, 225.

Helms' conclusions are supported by clinical notes and laboratory testing.  Tr. 226, 230 - 234.  Helms also wrote a letter to the record on September 19, 2001, stating that Dundon, "Is gradually improving, but is not expected to be ready to return to work in the near future."  Tr. 235.

Helms additionally completed a Lane County Rating of Mental Impairment Survey on October 1, 2001, specifically endorsing: *moderate* restriction in activities of daily living and *marked* restrictions in social functioning and concentration, persistence and pace.  236 - 237.  Helms found that Dundon was experiencing a prolonged episode of decompensation, in part because of the side effects of antidepressant medication which exacerbated Dundon's bipolar disorder.  Tr. 237.  Helms next affirmed that Dundon was suffering from a chronic mental illness in effect for more than two years and that Dundon's symptoms were "attenuated" by medications. *Id.*  Helms then endorsed and supported a statement asking if Dundon's mental impairments would be increased by minimal changes in mental demands or the environment  *Id.*  Helms finally noted that Dundon's condition would persist at the rated severity for twelve or more months.  *Id.*

Helms' opinion establishes the criteria meeting listing 12.04 for an affective disorder.  20

8 - FINDINGS AND RECOMMENDATION

C.F.R. § 404, Subpart P, Appendix 1, 12.04. To meet the Listing, a physician must endorse two "B" criteria *or* one "C" criteria. The "B" criteria are met when two or more marked limitations are met in one of four functional areas. *Id.* To meet the "C" criteria, a claimant must have a documented history of an affective disorder lasting two years or more and causing more than minimal limitations in basic work activities with symptoms attenuated by medication or psychological support. *Id.* The claimant must additionally show repeated episodes of decompensation, *or* a residual disease process causing predicted decompensation in response to marginal adjustments, *or* a current history of at least a year-long inability to function outside a supportive living arrangement. *Id.* Helms' report establishes two marked restrictions in the "B" criteria, as well as endorsement of "C" criteria decompensation.

While a specialist is not required for psychiatric diagnosis, a specialist is generally given greater weight. *Sprague v. Bowen*, 812 F.3d 1226, 1231 - 2 (9th Cir. 1987); 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). The ALJ rejected Helms' opinion in part because he found the period during which Helms treated Dundon insufficient, assigning Helms "little weight." Tr. 33. This is erroneous: there is no bright line rule determining when a doctor-patient relationship becomes a "treating" relationship. *Benton v. Barnhart*, 331 F3.d 1030, 1037-8 (9th Cir. 2003). One visit may suffice. *Id.*

The ALJ also rejected Helms' opinion because Helms' September 19, 2001 letter did not explain if Dundon would be unable to work for twelve months. As noted above a subsequent form completed by Helms in October 2001 established Dundon would be unable to work for twelve months or more. Tr. 33, 237. The ALJ failed to reconcile these elements of Helms' opinion. For these reasons, the ALJ's reasons for rejecting Helms' opinion should not be

9 - FINDINGS AND RECOMMENDATION

sustained.

### 2) Dr. Truhn

Psychologist Dr. Truhn evaluated Dundon in two sixty minute sessions at the request of DDS.[2] Tr. 172 - 178, 358 - 364. Truhn first evaluated Dundon in May 2001, and conducted a second interview and tests in November 2002. *Id.*

Truhn's first session included a clinical interview and testing. Truhn specifically stated that he did not have access to Dundon's records and that, "they should be incorporated by the reviewer." Tr. 172. Truhn noted Dundon's marginal hygiene, but found Dundon had good eye contact and appropriate speech. Id. Dundon denied manic episodes in reporting his history to Truhn but reported auditory hallucinations. Tr. 173. Truhn's testing found normal neuropsychological results, an invalid response to personality testing, and high average intellectual abilities. Tr. 177 - 178. Truhn's 2001 report included diagnoses of major depressive disorder with psychotic features, panic disorder, and alcohol dependence in remission.

Truhn again evaluated Dundon in November 2002. Tr. 358 - 364. Truhn's second report summarized Dundon's reported symptoms and included a review of Dundon's medical records. Tr. 362. Truhn cited Dundon's August 2001 hospitalization under the care of Dr. Helms, noting Helms' bipolar diagnosis and associated manic symptoms. Tr. 362. In finding Dundon had "more an issue of a personality disorder... than a mood disorder," Truhn did not discuss Helms' records, relying instead upon reports by a nurse practitioner. Tr. 364. Truhn concluded that Dundon's prognosis was "guarded." *Id.*

---

[2]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. §§ 404.1503, 416.903.

The ALJ cites Truhn's testing and clinical evaluation at length, basing his findings in part upon Truhn's reports, specifically Truhn's Minnesota Multiphasic Personality Inventory, cognitive testing and Truhn's suggestion that Dundon presented no evidence of mania at the time of his examination  Tr. 28, 30.  The ALJ then found Truhn's report "contradictory," and assigned him "little weight."  Tr. 33.  This is inconsistent.  The ALJ is responsible for evaluating conflicts in the medical evidence, but the ALJ's assessment of Truhn's reports is not an accurate, or rational, reading of the record.  *Edlund*, 245 F.3d at 1156, *Magallanes*, 881 F.2d at 750.

Truhn's report directly contradicts Helms and other medical evidence addressing Dundon's manic episodes.  Tr. 364.  Truhn also completed the same Lane County Rating of Mental Impairment Survey as Helms, on October 2, 2001.  Tr. 238 - 239.  Here Truhn referred to his May 2001 evaluation of Dundon in explanation for his answers, finding Dundon  moderately, not markedly, limited in activities of daily living, social functioning, and concentration, persistence and pace.  Tr. 238.  Truhn found Dundon was not suffering from a chronic mental illness, and suggested his condition would be episodic.  *Id.*  Truhn additionally suggested the reasons for Dundon's hospitalization was unclear from Helms' medical records.  *Id.*

Generally, a treating physician is accorded more weight than an examining physician. *Holohan v. Massinari*, 246 F.3d 1195, 1201 (9th Cir. 2001).  If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician.  *Lester*, 81 F.3d at 830.  Here, the ALJ erroneously found Helms' diagnoses unsupported by the medical record and subsequently relied upon Truhn while simultaneously affording Truhn "little weight."  Tr. 33.  These are neither clear and convincing nor sufficiently specific reasons discrediting Helms and ambiguously relying upon Truhn.

11 - FINDINGS AND RECOMMENDATION

*Lester*, 81 F.3d at 830.

### 3) DDS Reviewing Sources

Notably, DDS reviewing sources found Helms' opinion met the listing standard. Tr. 293 -294. DDS found that Dundon would be disabled if his impairment continued past April 2002, because this would satisfy the twelve month durational requirement. *Id.*, 20 C.F.R. §§ 404.1509, 416.909. The medical evidence produced by clinics treating Dundon between October 2001 and August 2003 supports this requirement.[3] Tr. 241 - 254, 256 - 275, 299 - 357, 273 - 386, 388 - 428, 442 - 496. The record closes in August 2003.

### 4) Social Worker Erica Freeman

Dundon claims the ALJ improperly rejected the opinion of Erica Freeman, a social worker who facilitated Dundon's mental health treatment. Dundon suggests a social worker is entitled to special consideration as a "treating source." This is incorrect: Freeman is considered an "other" source, and is ordinarily evaluated under lay witness standards. 20 C.F.R. §§ 404.1502, 404.1513(d), 416.913(d). However, in conjunction with a physician, Freeman may be considered a medical source for her collaborative statements only. *See Benton*, 331 F.3d at 1037, 1039.

Following his August 2001 hospitalization, Dundon received ongoing care and counseling from Lane County Mental Health (LCMH) and the associated Center for Family

---

[3]Most of the medical record is comprised of treatment notes from various Eugene clinics. These notes were produced by nurse practitioners, nurses, and social workers, and so cannot be evaluated as "acceptable medical sources." 20 C.F.R. §§ 404.1502, 404.1513(d), 416.913(d). These records corroborate Helms, rather than Truhn, but because they are not acceptable medical sources they are not probatively discussed in evaluating medical opinions.

12 - FINDINGS AND RECOMMENDATION

Development (CFD).  Tr. 256 - 275, 299 - 357.  On November 2, 2001, CFD mental health counselor and therapist Freeman completed a form surmising Dundon's manic symptoms, difficulty tolerating medications, and attempted activities of daily living.  Tr. 299 - 301.  This report corroborates Dundon's status earlier determined by Helms.  *Id.*

The ALJ found Freeman's analysis insufficient, emphasizing that Freeman is not an acceptable medical source and giving her report no weight. Tr. 33.  A team approach to healthcare is clearly permissible.  *Benton*, 331 F.3d at 1037, 1039.  Here, Sarah Shendrickson, a physician, co-signed Freeman's report.  Tr. 301.  It is reasonable to conclude Shendrickson accepted authorship of a report she signed.  Freeman's November 2, 2001 report is thus evaluated as medical evidence.  *Benton*, 331 F.3d at 1037, 1039.

### c.  Medical Evidence Conclusion

This court notes that, after improperly rejecting Helms, Truhn, and Freeman, as discussed above, the ALJ failed to directly identify *any* medical source deserving significant weight in his opinion.  This is erroneous: disability determinations cannot be made without medical source statements.  20 C.F.R. §§ 404.1527, 416.927, *see Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

### III.  Lay Witness Testimony

Freeman's observations made without Shendrickson's counter-endorsement are evaluated under lay witness standards.  20 C.F.R. §§ 404.1502, 404.1513(d), 416.913(d).  Dundon also contends the ALJ improperly rejected testimony of his ex-wife, Diana Groneman.

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d)(4); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

13 - FINDINGS AND RECOMMENDATION

Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill*, 12 F.3d at 919. The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Dodrill*, 12 F.3d at 918. The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Nguyen*, 100 F.3d at 1467.

### a. Ms. Freeman

The ALJ did not give acceptable reasons for rejecting Freeman as a lay witness, other than noting that she is not a medical source. Tr. 33. This is not a germane reason: a lay witness, by definition, is not an acceptable medical source. 20 C.F.R. §§ 404.1514(d), 416.913(d). Additionally, the ALJ relied upon Freeman's observations in support of his credibility finding. Tr. 29, 31. This is inconsistent with his rejection of Freeman's testimony. Here, the ALJ failed to give acceptably germane reasons for dismissing Freeman's observations made without physician counter-endorsement regarding Dundon's mania, his difficulty tolerating medication side effects, and his social isolation. Tr. 331, 335, 442 - 494.

### b. Ms. Groneman

Dundon suggests the ALJ did not give sufficiently germane reasons for rejecting the testimony of his ex-wife, Diana Groneman. The ALJ found Groneman not "entirely credible," regarding Dundon's daily activities but relied upon Groneman's observations regarding Dundon's drinking. Tr. 33. An ALJ is not required to incorporate all aspects of an opinion or source into

his findings. *Howard v. Barnhart*, 341 F.3d 1006, 1012 - 1013 (9th Cir. 2003). The ALJ reasonably noted that Groneman's testimony regarding Dundon's drinking is supported by other statements in the record, while her testimony regarding his daily activities is contradicted by other sources in the record. This court must uphold inferences reasonably drawn in an ALJ's rational reading of the record. *Batson*, 359 F.3d at 1193, *Magallanes*, 881 F2d at 750.

## IV. RFC Calculation

The ALJ's RFC encompassed Dundon's concentration difficulties and personality disorder, but does not encompass additional non-exertional factors stemming from Dundon's documented bipolar syndrome. Tr. 35. This omission is erroneous in light of the testimony discussed above. Mental impairments, if severe, must be included in an RFC calculation. 20 C.F.R. §§ 404.1520a(d), 416.920a(d).

## V. The ALJ's Findings at Steps Four and Five

The vocational expert at Dundon's hearing stated that Dundon would be significantly restricted in performing jobs in the national economy if Dundon had at least one "marked" and three "moderate" restrictions in his ability to function in a work setting. Tr. 596. In light of the improperly rejected evidence discussed above, the ALJ erred in omitting this vocational testimony from his step four and five findings.

## **REMAND**

District courts have discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award

15 - FINDINGS AND RECOMMENDATION

of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Brown*, 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 quoting *Smolen*, 80 F.3d at 1292. Such is the case here: Helms' opinion shows that Dundon meets Listing 12.04. The matter should be remanded for an immediate award of benefits.

## CONCLUSION

For these reasons, this court recommends reversing the decision of the Commissioner and remanding this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate award of benefits.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due July 14, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 30th day of June, 2006.

        __/s/ Paul Papak_____
        Paul Papak
        United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION